I guess we may as well switch. That'll help us to keep it straight. Well, all of your papers are there. It doesn't matter. We appreciate that this is the cross-appeal. I think stay put. Okay, so this is case number 162573, Securus Technologies, Inc., against Global TelLink Corporation. Mr. Legico. Good morning, Your Honor. May it please the Court, I represent Appellant Securus Technologies, Inc. So the patent at issue here, the 243 patent, relates to a very common-sense method for controlling telephone systems. It uses pens and voice prints to authenticate users and restricts access unless the user is authorized to the public telephone network. So despite the presence of those simple features in the prior art, the Board nevertheless found that Securus failed to prove the unpatentability of the claims at issue. Securus respectfully requests the Court reverse the Board's decision because it made several errors. First, in construing the phrase during each access attempt to said public telephone network by said potential caller, the Board failed to apply the broadest reasonable construction of the term. Second, it distinguished Susan based on that claim language and it erred in doing so. And finally, it failed to conduct a proper obviousness analysis when considering the motivations to combine the reference Susan with the reference Gainsborough. With respect to the construction of during each access attempt to said public telephone network by said potential caller, the Board found that the phrase included a set of actions, an encompassed set of actions. In fact, in ruling on Securus's petition for rehearing, it particularly found that the phrase constitutes an action or set of actions. It cannot be defined by a duration of time. And that reiterated its point in its final written decision that the phrase does not cover a period of time. And the Board found that those several actions encompassed by the access attempt included prompting, recording, matching, comparing, and granting the various steps of the claim. Securus demonstrated that those steps were in Susan and thus demonstrated that an access attempt was occurring. Nonetheless, so Securus met the Board's stated- What do you think is the best part of Susan for supporting her position? What column and line numbers do you think best support Susan? So with respect to the prompting step, Susan at column 5, lines 33 through 37, column 6, lines 26 through 30, column 10, lines 10 and 11. With respect to the recording step, column 2, lines 45 through 50. With respect to the matching step, column 5, lines 33 through 37. With respect to the comparing step and the granting step, column 3, lines 13 through 19. All of those citations show that these steps occurred prior to a connection to the network. Under the broadest reasonable construction of an access attempt, the access attempt must occur- It must be defined by some points in between when the user picks up the telephone to access the system and when the user is either granted or denied access to the network. And Susan discloses in all of those places those steps occurring prior to the connection. And obviously the user has picked up the telephone to access the system at that point when it's prompting for information and there's a matching and comparing occurring, etc. So as I understand it, the board said that these kinds of authentication steps in Susan, they occur either while the conversation is in process or before there is a true access attempt to the phone network. Is that the board's finding? That was one of the board's findings, Your Honor. But all of the passages that I cited are passages that show that the steps occurred before the connection is actually established. So we're not talking about prompting or recording during the conversation in progress. So it really boils down to whether the board was right about its observation that Susan also does these sorts of authentication steps before there's an access attempt compared to during an access attempt, which is recited in the claim. I agree. So can you speak to that, why you think the board got it wrong in its understanding that Susan teaches an embodiment that does all these steps only before the access attempt to the phone? Yes. So the board's construction of that term and definition of when an access attempt begins is absolutely unclear. It never states when an access attempt begins or ends in its opinions, despite the fact that Securus filed a request for a hearing on that very issue and asked the board to specify when does an access attempt begin and end. Securus said access attempt begins when the user picks up the telephone. And the board never addressed that argument, but nevertheless found that Susan's disclosures occur sometime either before the user actually tries to access the system. It's very unclear, based on the current record, why the board reached that decision. And I think that's, in and of itself, reversible error here, because the board failed to articulate its understanding of the claims and its claim construction. Well, even if I assume that, say, the only logical reading of the claim is that all of these actions are part of the access attempt, and that Susan nevertheless teaches those actions during the access attempt, there's this other hurdle you have, which is whether or not you, the petitioner, met your burden of proving by preponderance of evidence that one of skill in the art would be motivated to combine Susan and Gainsborough. And I had a hard time finding something in either your petition or your petitioner reply that looked like a fully realized explanation, you know, supported with evidence on why one of ordinary skill in the art would be motivated to combine these two references. So could you point me to your best explication of your theory on a motivation to combine Gainsborough and Susan in your petition and or your reply? So the reply appendix sites 1310 through 1311, I think it even goes on to 1315, talks about the motivations to combine Susan and Gainsborough. 1310? 1310 through 1315. Is there a quotable quote here? Well, there's several. What I saw, let me just tell you what I saw. I saw you saying here that these two patents are in the same field and drawn to systems for managing institutional calls. And then that's basically it. And then at 315, there's the sum up sentence. A person of skill in the art would understand that the features of Gainsborough could be combined with the features of Susan in any number of architectures, the implementation depending on the particular system. The problem I have with that is this is not much analysis on this question. If this kind of analysis was done in a board opinion, I'd be compelled to vacate that as being insufficient reasoning to support the finding for motivation to combine. And so when I look at what you've offered up for the board to consider, it seems likewise meager and insufficient. So could you please explain to me why this isn't meager and insufficient? Well, to begin with, we did show that the two references are in the same field and that they would be combined or it should be that a person of ordinary skill would combine them. Let me just explain. My concern is that base theory, that very, very basic theory, the logical extension of that is any two references in some broadly defined field of art could and should be combined any old way you want. Statistically, now you're thinking about so many different iterations of things that you are just writ large proclaiming to be obvious without any further analysis. I'm troubled by that. So I need more than just saying that two given references happen to be contained inside a broadly defined field of art. Well, it's not only that they're in the same broadly defined field of art. We're talking about systems that restrict access to a telephone system or that monitor what happens in a telephone system. They're addressing the same problems. They're addressing problems of abuse in the telephone system. Inmates going and calling people they're not supposed to or inmates using hook flash techniques to initiate, I'm sorry, using three-way calls to initiate calls to people they're not supposed to. That's true. Gainsborough is about trying to stop prisoners from doing something sketchy when they make phone calls. Susan, however, doesn't say anything about prisoners. It's about authenticating employees' access to their phones in the office. And so that is just a different context than a penitentiary in trying to stop criminals from doing some kind of wrongdoing or mischief through their phone calls. Well, it relates to employees requiring access to dial certain people and authenticating themselves into the system. And, in fact, it specifically mentions in Susan that the present invention is suitable in particular for operation of communication networks to increase the security of voice telephony customers against abuse. That's in Appendix 0165, Column 11, Lines 21 through 23. They're both directed to preventing abuse of telephone systems. So we're not just talking about two references that generally relate to telephones. We're talking about Susan, which sets up a system for granting access with Gainsborough that monitors calls once you have access. There's nothing incompatible about the two systems. And Secures discussed that in its reply and rebutted Dr. Forey's, GTL's purported expert, who said, oh, you know, nobody had ever combined these systems. But Dr. Forey's never explained why you couldn't take the PC embodiment of Gainsborough and use it within the Susan of system. There is no explanation there. And common sense dictates that a person of ordinary skill in the art will be able to figure that out. The real problem here is that the board did not consider and analyze the arguments in Secures' papers. It merely credited Dr. Forey's and then, based on crediting Dr. Forey's, dismissed all Secures' arguments. But as this court held in Belden v. Birketech, a petitioner is not even required to have an expert declaration or a declaration at all, let alone an expert declaration in support of its petition. So the mere fact that Dr. Forey's was entitled to maybe more credibility than Dr. I think the board can just skip the step of going through each of Secures' arguments and analyzing them and explaining why they should be, why it found that they were rejected. So I think this is a real cuts-forth issue. And the board did not meet its duty of analyzing fully Secures' position and explaining why it rejected it in its final written decision and its order on Secures' request for a hearing. I'm going to reserve the remaining time for rebuttal. Yes, we'll save your rebuttal time. Thank you, Mr. Legge. Thank you. Mr. Picard. Good morning. Byron Picard on behalf of Global Telink. May it please the court, as Judge Chen's questions highlighted, to prevail in this appeal, Secures must persuade this panel that two reversible errors were committed by the board. First, that the board lacked substantial evidence in its motivation to combine findings. And second, that the board either erred in its claim construction ruling on the During limitations or that it lacked substantial evidence in finding that Cezanne met the During limitations as the board construed them. I'd like to start with the motivation to combine. What Secures has presented here is a substantial evidence review, and that's for the straightforward reason that the board's findings on the motivation to combine are factual in nature. And the board was armed with a full record, which we provided through Dr. Forese. This court's precedents are clear that the motivation to combine analysis must be searching and be specific. And frankly, if you look at the evidence that Secures provided to the board, they did not arm the board with sufficient evidence to find in its favor. If the board had, I think this panel would be rightly justified in vacating and remanding it. But this panel need not do that because the board went a step further. It considered all the evidence in the case and accredited the testimony that Global Telling presented, again, through Dr. Forese. And he provided several reasons why there would not have been a motivation to combine. Among others, he pointed out that there were different architectures in Cezanne and Gainesboro. Cezanne is a PBX-based system with an intelligent peripheral, whereas the Gainesboro system uses a bus-compatible plug-in. And if we look at the appendix at 1067 and carrying on to 1068, we see Dr. Forese's testimony on this point. And the assertion was made that Dr. Forese didn't explain why the skilled artisan would have thought, for example, that Cezanne and Gainesboro were incompatible. But in fact, Dr. Forese did that in paragraph 57. And he says, Cezanne does not disclose any IBM PC-based architecture, which allowed for a plug-in board. Rather, Cezanne employs exchanges and PBXs. That is, there's some physical incompatibilities here. Dr. Forese also explained that Cezanne and Gainesboro are concerned with very different – There's no law that says that references have to be physically combinable, right? No, there isn't. So just because they work with incompatible systems doesn't mean that you can't draw from the principles from the two references and then understand a way to combine the two principles, assuming there's a reason to do so. Dr. Forese's concern was whether the skilled artisan would have been motivated to combine the teachings. But it is relevant to consider the context in which those teachings appear. And Dr. Forese provides this is one of the things the skilled artisan would have thought about is, could I even combine Cezanne and Gainesboro? There would have been challenges there. But he doesn't stop just at that architectural point. He also points out that Cezanne and Gainesboro appear in different contexts. Cezanne is in an office in the mobile setting. Gainesboro is in a prison context. Cezanne is primarily focused on preventing the unauthorized long-distance calling and cost recovery, whereas Gainesboro is really focused on avoiding and preventing these inappropriate conversations that inmates might make. And finally, I think most importantly, Dr. Forese explained that the fields of the two references were not the same. He points out that the institutional calling field is quite broad with many subspecialties and that these two references were not drawn from the same fields. The board, having credited that testimony, was well within its discretion as a fact finder. I would like to point out the- I'm just curious. Are you familiar with another Gainesboro patent that's described in the background section of your patent, the 243 patent? I'm talking about Gainesboro 013 in the top of column 8. I'm aware of the reference to that patent, Your Honor. I'm not familiar with it. Okay. Well, your patent describes this different Gainesboro patent as a system for controlling, monitoring, recording, and reporting telephone communications. And the system deals primarily with identification of a user through use of a PIN and restricting phone communications through a profile accessed by the PIN. And so all I'm saying is this particular Gainesboro seems to show that it was known in the art to combine the notion of pre-authenticating someone before they can access a telephone network along with the idea of monitoring, recording, reporting telephone communications, and controlling those telephone communications. Just my comment on that is that that is not the case that SECURE has presented to the board. They're not relying on that Gainesboro reference. What we have here is the combination of the Suzanne as the base reference and the separate Gainesboro reference. So nobody at any point during the time of this entire IPR proceeding pointed out this particular portion of your background section of your patent? I'm not aware that that was ever done during this hearing, this proceeding. If I may have one more point on the motivation to combine. The point was made that the board somehow ignored the evidence that SECURE has presented on this point. And I would just direct the panel to the final written decision. Bear with me. This is that appendix 24. And they wrote, we credit the testimony of Dr. Forge more strongly than that of Dr. Axel because Dr. Forge provides explicit reasoning. And that suggests, of course, that they considered Dr. Axel's testimony. And then if we look at the decision on rehearing, the board makes very explicit that it did consider that testimony and still found it unpersuasive. If I may touch briefly on the claim construction issue, I would start first, of course, with the claim language. The issue here, of course, is which of these steps are modified by the during limitation. The board construed, and we agree, that the prompting, recording, matching, comparing, and granting steps are modified by that limitation. And while not dispositive, I think the punctuation of the sentence in some ways is helpful. If we look at the during limitation, it ends in a colon. And I think, therefore, suggests that there are a series of items that are followed that should be modified by that. Dr. Forge then explains, and I think there's a logic to the claim, that the during limitation should cover each of those limitations because it naturally follows that the attempt to access the network would proceed with a prompt, then the PIN and voice verification, and then it ends with a grant. Of course, a classical grammarian would say that after the colon, everything that follows with a semicolon is all included in that access attempt step. And that can't be right either. That's right. That can't be right. Because if we look at the last three steps of monitoring, at least one conversation, that suggests that the connection has been made and the access to the public telephone network, therefore, has been granted. The same with the recording of conversation and detecting the presence of predetermined keywords in that conversation. So those, just as a matter of logic, would have to fall outside of the during attempt to access phase of this method. Why wouldn't it be, then, that under the broadest reasonable construction, maybe just two of those four steps you've identified would be modified by the during clause? Or maybe one of them. Why do all four of them have to be, under the broadest construction, reasonable and consistent with the spec? So I think if we look to the specification, there's two places where the patent talks about access attempt. The first in column 11 at lines 30 and 41. And there it describes the access attempt beginning with a prompt. And this is a failed access attempt in this example. And there's a failure to match, and therefore the attempt is unsuccessful. We know that the prompt, the provision of the PIN, and the attempt to match are within access attempts. There's a similar description at column 12, lines 18- So you're saying there's only one embodiment disclosed, so the claim should be limited to that? There's a uniform description of attempts. They all consistently describe these steps as being part of an attempt. And we have extrinsic evidence, which the board credited and relied on, which confirms that reading. And the board's fact-finding there ought to be given deference under TEBA. Turning finally to the substantial evidence question here. If I may just step back for a moment, there's been a bit of shifting positions in Securis' case in this IPR and even in this appeal. In its petition, Securis only attempted to show that the prompting step was shown in the prior art as occurring during an access attempt. And in reply, they hung their hat on a single disclosure at column 10 of the patent. But if we look now at their blue brief, they now have a litany of snippets from Suzanne that they attempt to show that the particular steps occur both after the attempt has begun and before the access is granted. But weren't those arguments presented to the board? Not in the way they're presented here. I don't know what you mean by the way. Of course, it's not the same words. This is an appeal. The question is, were the arguments presented? I would say no, and I want to make a fine point on that. Some of these portions of the spec were cited below. Some weren't. But they were not cited for the proposition. The entire patent is before the board. That's why we have this system. This is an expert board that reviews the patent. That's right, but the board was not obligated to go beyond what Securis provided them in order to make Securis' case. And that's what the board did here. The board is obligated to reach the correct result? In view of the various burdens that have been assigned in the IPR. The board, given the record that the parties present to it, yes, must make correct rulings. But it is always incumbent on Securis, in the first instance as petitioner, to make it showing to the board. To arm it with the evidence it needs to find them in favor. And they didn't do that here. One of the parts of the specification that I thought seemed close was at column 3, lines 13 through 19. Could you look at that part of the patent and tell me why that doesn't disclose the elements of the claim? Right, and so I believe that Securis has cited that as satisfying the comparing step of the first and second voice print. If we look at column 13, lines 16 to 19, it says as an alternative to voice recognition during connection, the speaker can be assigned to a billing account before the connection is established. In this case, the telephone user is requested to provide a voice sample, and the connection is only established once the voice sample has been identified and the speaker is identified as authorized. So there's two problems there. The word connection does not, if we think of an access attempt as a beginning and an end, and the end is the granting of the access. The connection occurs after the grant of access. So in Cezanne, the PBX would connect the caller in a successful instance to the public telephone network. And a connection happens that is caller-to-caller in the public telephone network. There's switching and routing that happens there. So we don't know whether that action happens after the grant or before the connection, and we also don't know exactly when the, in this case, the first voice print was provided by the user in Cezanne. And I think illustrative at this point is if you look at Cezanne column 7, lines 64 to 67 here, Securus has pointed to that section of Cezanne as satisfying the comparing limitation, and I think they hone in on the language that if a voice signal can be assigned to one of the reference data records, then the subscriber is considered to be authorized and entitled to call. But this is describing what's in Figure 1, and if we look at Figure 1 of Cezanne, what's shown there is subscriber calls, subscriber A calls, subscriber B answers, and then after that connection is made, this verification of the voice prints happens behind the scenes. And what Cezanne shows is that that process can take 30 seconds to one minute, and what Cezanne is trying to do is provide sort of a seamless calling experience. You don't want to hang up or delay the call process in an office environment before making the connection. Unless there are further questions from the panel, I'll yield the remainder of my time. No? I think we're okay. Good. Thank you. Thank you, Mr. Picard. Mr. Olegko. I'd like to first address the motivation to combine issue quickly again. So the motivation to combine tests isn't whether or not the two references specifically say you can implement the systems together. GTL's expert, Dr. Fori, claimed that a person of ordinary skill in the art would have difficulty combining the two systems, but he never points to any disclosure in Susan saying it wouldn't be combinable with a system such as Gainsborough. That's not necessary, is it? It's not necessary that there be an express disclosure in the primary reference that it can't be combined with the secondary reference. That's not a requirement, is it? Well, all I'm trying to say is that Dr. Fori's conclusion that the two references wouldn't be combined, that they were incompatible, is not... Sure, but he can, as one of ordinary skill in the art or technical expert, could say that that's the case. It's not required that the reference expressly say so, right? I agree. I agree. But the two references could map together. I mean, one is talking about a PBX-type system... There is not substantial evidence to support the board's conclusion otherwise. Well, the two, as I noted before in my opening, the two patents are addressing similar problems of abuse of telephone systems in controlled environments. Dr. Fori's specifically stated that the 243 patent itself was not limited to the prison context, so there's no reason to say, oh, well, Gainsborough, it's in prison context. Susan, it's in some corporate context. You shouldn't be combining the two, because that's not a defining component of the 243 patent. The Gainsborough reference itself is just a physical device feature that you could implement in any system. And SECURES pointed that out in its reply, and as I noted before, the real problem here is that the board did not go through and address SECURES's arguments and explain why Dr. Fori's was right and SECURES's wrong. The board is not entitled to just ignore the statements in the references just because Dr. Fori says so. And the board is required to reach the correct conclusion based on the disclosures of the references, not just based on the particular arguments made at a certain point in time by SECURES. Anything else? Let's add a couple of minutes to the time and whatever else you need to tell us. I would like to briefly address, again, the claim construction argument. There's nothing in the spec that requires that all those steps occur, the steps of prompting, et cetera, occur during the access attempt. The only step that's really tied to the access attempt is the prompting step, as we noted in the brief. The patent consistently describes the prompting step as occurring during the access attempt, and then in following sentences that don't relate to the access attempt itself, it talks about authentication techniques, et cetera. Why wouldn't those be part of the authentication attempt, the access attempt, matching the voices and matching the ID numbers? That seems just so naturally to be part of the authorization to access the phone. We're talking about an access attempt to the public cell phone system by the potential user. We're not talking about necessarily a backend system. We're talking about what does the user do to access the system? What's its access attempt? Its access attempt begins when it picks up the telephone, and then its only option then is to answer the prompts. The rest of the backend could happen after that attempt is made by the user. So the user would gain access to the phone, and then after having access to the phone, you understand the claim to still then at that point call for voice recognition? The user actually wouldn't have access at that point to make the telephone call, but the attempt would be complete. The user's actual physical attempt of entering in the PIN or the voice print would be complete. Then the backend system would decide whether or not access is actually granted. But despite that, even if the board is correct that all of those steps, the prompting through the granting steps, are encompassed within during each access attempt, Susan discloses that all those steps do occur during that period. The period between when the user picks up the phone and the user is actually finally connected. And all of the particular citations that I gave from Susan previously do show that those steps occur before the connection is actually made. If there are no further questions. Okay. Good. Thank you. Thank you both. The case is taken under submission.